IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

JAMIE MIDDLEBROOK,

        Plaintiff,

v.                                              No. 07-2373

STATE OF TENNESSEE, TENNESSEE
DEPARTMENT OF CORRECTION, GEORGE
LITTLE, Commissioner of Tennessee Department
of Correction, in his individual and official capacity,
 MARK H. LUTTRELL CORRECTIONAL
CENTER, REUBEN HODGE, Warden of Mark H.
Luttrell Correctional Center, in his individual and
official capacity, CHARLES BANKS,
Deputy Warden, in his individual and
official capacity, and DWIGHT BARBEE, Unit
Manager, in his individual and
official capacity,

        Defendants.

_____

ORDER GRANTING IN PART AND DENYING IN PART
THE DEFENDANTS' MOTION TO DISMISS
_____

The Plaintiff, Jamie Middlebrook, has sued the State of Tennessee, the Tennessee

Department of Correction ("TDOC"), George Little, Commissioner of TDOC, Mark H. Luttrell

Correctional Center ("MLCC"), Reuben Hodge, warden of the MLCC, Charles Banks, deputy

warden, and Dwight Barbee, unit manager, alleging that these Defendants violated her constitutional

rights pursuant to 42 U.S.C. § 1983[1] and breached 42 U.S.C. § 10801 et seq. In addition, she brings

_____

[1] Section 1983 imposes liability on any "person who, under color of any statute,
ordinance, regulation, custom or usage, of any State" subjects another to "the deprivation of any
rights, privileges, or immunities secured by the Constitution or laws." 42 U.S.C. § 1983. In
order to prevail on such a claim, a section 1983 plaintiff must establish "(1) that there was the

state law claims against the Defendants, charging them with negligence, gross negligence, and willful, reckless, and wanton misconduct. Before the Court is the Defendants' motion to dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. (Docket Entry ("D.E.") No. 16.) For the following reasons, the Court hereby grants in part and denies in part the motion.

BACKGROUND

The Plaintiff, Jamie Middlebrook, is an inmate at MLCC, an all-female correctional facility located in Memphis, Tennessee. (D.E. No. 1, Compl. ¶¶ 11-13.) According to Middlebrook, the cells of the prison are poorly ventilated and suffer serious heating and air conditioning problems, which result in temperatures that are either vastly above or below normal indoor temperatures. (Id. ¶ 14.)[2] Staff do not provide appropriate clothing for the extreme cold or pass out ice when it is too warm. (Id. ¶ 17.) In addition, the plumbing does not function properly, resulting in leaks and mold, water that is either too hot or too cold, and raw sewage backing up into the building. (Id. ¶¶ 14, 28) Middlebrook also alleges that the inmates receive insufficient cleaning supplies and thus have to endure malodorous and vermin-infested cells. (Id. ¶ 16.)

Middlebrook contends that the facility is understaffed and therefore unable at times to dispense medicine to inmates or provide them with medical care. (Id. ¶ 15.) The staffing issues also implicate MLCC's ability to evacuate inmates in the event of a fire, especially in light of the fact

---

deprivation of a right secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." Wittstock v. Mark A. Van Sile, Inc., 330 F.3d 899, 902 (6th Cir. 2003). "Section 1983 is not the source of any substantive right, but merely provides a method for vindicating federal rights elsewhere conferred." Humes v. Gilless, 154 F. Supp. 2d 1353, 1357 (W.D. Tenn. 2001).

[2] The Plaintiff alleges that MLCC is the only prison that does not provide air conditioning for some of its inmates. (Id. ¶ 27.)

2

that the cells are padlocked and must be opened one at a time.  (<u>Id.</u> ¶ 23.)  Furthermore, officers of the jail mete out disciplinary action based on whim and do not follow MLCC's written policies. (<u>Id.</u> ¶ 18.)  They also sexually harass the Plaintiff and make unwelcome advances.  (<u>Id.</u> ¶ 32.) Prisoners are not segregated according to their classification, claims the Plaintiff, allowing inmates who should be separated from the Plaintiff to assault her.  (<u>Id.</u>¶ 18.)  Middlebrook also alleges that overcrowding at the prison leads to higher levels of violence.  (<u>Id.</u> ¶ 24.)  Inmates, including the Plaintiff, do not receive adequate opportunity for exercise, recreation, or fresh air, and are not provided access to legal materials.  (<u>Id.</u> ¶¶ 20-21.)  Middlebrook argues that the Defendants have actual knowledge of these conditions, as the result of inmate grievances, inmate council meetings, maintenance work requests, and public complaints by inmates.  (<u>Id.</u> ¶ 25.)

STANDARD OF REVIEW

Rule 12(b)(6) permits dismissal of a lawsuit for failure to state a claim upon which relief could be granted.  <u>See</u> Fed. R. Civ. P. 12(b)(6).  The Rule requires the Court to "construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief."  <u>Grindstaff v. Green</u>, 133 F.3d 416, 421 (6th Cir. 1998).  "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim."  <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  However, "[t]o avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all the material elements of the claim."  <u>Wittstock</u>, 330 F.3d at 902.

<u>ANALYSIS</u>

The Defendants move to dismiss the Complaint on the following bases: 1) the Plaintiff has not exhausted her administrative remedies; 2) her claims are barred by the statute of limitations; 3) she seeks to hold certain of the Defendants liable under § 1983 by relying on the theory of respondeat superior; 4) the Tennessee Claims Commission is the only proper forum for negligence claims against the State, and TDOC and MLCC, as agencies of Tennessee, are immune from suit; 5) the Plaintiff's claims are conclusory and not ripe; 6) her § 1983 claims are barred for failure to allege a specific physical injury; 7) her allegations of deliberate indifference are conclusory; 8) her contentions that certain Defendants failed to train employees are conclusory; 9) her denial of court access claim fails because she has not alleged any actual injury; and 10) certain of the Defendants are entitled to qualified immunity.  (<u>See</u> D.E. No. 16.)  The Court will address these arguments in turn.

1.      <u>Exhaustion of Administrative Remedies</u>

Section 1997e(a) of the Prison Litigation Reform Act requires that prisoners exhaust all available administrative remedies at the correctional facility in which they reside before they can bring § 1983 claims challenging prison conditions.  42 U.S.C. § 1997e(a).  The Defendants argue that pursuant to <u>Bey v. Johnson</u>, 407 F.3d 801, 805 (6th Cir. 2005), the Plaintiff was required to attach documentation to the Complaint proving her exhaustion of administrative remedies.  (D.E. No. 16 at 2-3.)  However, the United States Supreme Court has recently held that an inmate's failure to exhaust administrative remedies is an affirmative defense and that prisoners need not specifically plead or demonstrate exhaustion in their complaints.  <u>Jones v. Bock</u>, _ U.S. _, 127 S. Ct. 910 , 921 (2007) (rejecting Sixth Circuit precedent that required prisoners to attach proof of exhaustion to their

petitions to avoid dismissal).  The Court thus denies the Defendants' motion to dismiss on the basis that the Plaintiff has failed to demonstrate exhaustion of administrative remedies.

2.    Statute of Limitations

Because § 1983 does not contain its own statute of limitations, courts must look to state law to determine the relevant limitations period.  Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir. 2005).  Tennessee provides for a one-year limitations period for federal civil rights actions.  Id. (citing Tenn. Code Ann. § 28-3-104(a)(3)).  In determining when the limitations period began, courts must refer to federal law.  Id.  The Sixth Circuit has held that under federal law, the statute of limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action. A plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence.'"  Id. (quoting Sevier v. Turner, 742 F.2d 262, 273 (6th Cir. 1984)).

In this case, the Plaintiff filed suit on May 29, 2007.  (See D.E. No. 1, Compl.)  The Defendants argue that all § 1983 claims based on allegations that occurred prior to May 29, 2006, should be dismissed.  (D.E. No. 16 at 3-4; D.E. No. 1, Compl. ¶¶ 35; 44-45.)  Middlebrook argues in response that the statute of limitations only began to run after the grievance proceedings had been concluded.  (D.E. No. 27 at 3.)  Neither party is correct.  The Sixth Circuit has held that the statute of limitations applicable to a prisoner-initiated § 1983 suit is tolled while the plaintiff exhausts available state remedies.  Waters v. Evans, 105 Fed. Appx. 827, 829 (6th Cir. 2004) (unpublished); Brown v. Morgan, 209 F.3d 595, 596 (6th Cir. 2000) (remanding a case to the district court when the record did not reveal when the period of exhaustion expired).  The reason for tolling the statute of limitations is that prisoners cannot bring suit in federal court until the administrative remedies at

the facility are exhausted and it would be unfair to penalize them for not bringing their claims within a year of accrual, if the administrative proceedings were still ongoing. See Brown, 209 F.3d at 596. Thus, the statute of limitations begins to run once the plaintiff becomes aware of the injury, but is tolled while the prisoner seeks redress through administrative proceedings at the prison. In this case, the record developed thus far does not reveal when the Plaintiff commenced her attempt to exhaust administrative proceedings at MLCC or when those proceedings were finished. Thus, because the Court cannot conclude when the statute of limitations on any of her claims were tolled and for how long, it cannot grant the Defendants' motion to dismiss on the basis that they were filed too late.[3]

3.      Supervisory Liability

The Sixth Circuit has held that § 1983 liability

> will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984). The Defendants argue that Middlebrook has made "conclusory allegations with no factual foundations," and has failed to make a showing that any of the Defendants "authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct . . . ." (D.E. No. 16 at 4.)

The Complaint asserts that Defendants George Little, Commissioner of TDOC, was responsible for "the TDOC's operations and formulations and development of Defendant TDOC's

---

[3] In the alternative, the Plaintiff argues that the statute of limitations has not run because her the injuries are ongoing. (D.E. No. 27 at 3.) However, as stated above, the Sixth Circuit has clearly held that the statute of limitations begins to run "'when the plaintiff knows or has reason to know of the injury which is the basis of his action . . . .'" Roberson, 399 F.3d at 794.

policy and procedures." (D.E. No. 1 Compl. ¶ 6.) Reuben Hodge, warden of MLCC, Charles Banks, deputy warden of MLCC, and Dwight Barbee, a unit manager at MLCC, all were "responsible for [MLCC's] operation and implementation of it's [sic] policy and procedure." (Id. ¶¶ 8-10.) The "Facts" section of the Complaint does not state how any of these officials were involved in the wrongdoing that is the basis for the Plaintiff's claims. However, Middlebrook has attached exhibits to his pleading which establish that Hodge, Banks, and Barbee each were aware of many of the specific problems the Plaintiff lists, because inmates turned to them for solutions. (See e.g., D.E. No. 28 at 3-4, Inmate Council Meeting Minutes - March 17, 2005 (complaints about a lack of ice, presence of ants, lack of sanitary pads discussed; Hodge and Barbee present) D.E. No. 28-2 at 11, Inmate Council Meeting Minutes - July 21, 2005 (complaints about plumbing, lack of ice discussed; Hodge, Banks, and Barbee present); D.E. No. 28-4 at 8-9, Inmate Council Meeting Minutes - May 18, 2006 (complaint about sexual harassment and a lack of ice discussed; Hodge, Banks, and Barbee present).)

While Hodge, Banks, and Barbee may have been aware of the Plaintiff's contentions, the Court could not find any reference to George Little in the hundreds of pages the Plaintiff attached to her Complaint. Middlebrook's bald assertion that Little was "personally involved" in the unconstitutional conduct, without any factual allegations to support this claim, does not suffice under Rule 12(b)(6). See Bell Atl. Corp. v. Twombly, _ U.S. _, 127 S. Ct. 1955, 1964-65 (2007) (holding that plaintiffs must provide sufficient factual allegations to "raise a right to relief above the speculative level" in order to survive a motion to dismiss). As such, there are no grounds to hold him *individually* liable pursuant to § 1983. See Leach v. Shelby County Sheriff, 891 F.2d 1241,

1245-46 (6th Cir. 1989), <u>cert. denied</u> 495 U.S. 932 (1990) (holding that official liability can be based on proof of an unconstitutional policy or custom, rather than a showing of supervisory liability).

        4.      <u>Forum & Sovereign Immunity</u>

        The Eleventh Amendment prevents a state, state agency, or state officer acting in his official capacity from being sued for monetary damages in federal court, unless the state expressly consents to be sued. <u>Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.</u>, 527 U.S. 666, 669-70 (1999) (finding that states may waive their immunity and consent to suit in federal court); <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 71 (1989) (holding that a suit against a state official is no different than a suit against a state); <u>Fla . Dep't of Health & Rehabilitative Servs. v. Fla. Nursing Home Ass'n</u>, 450 U.S. 147, 148-50 (1981) (per curiam) (determining that an agency of a state government is part of the state for purposes of the Eleventh Amendment); <u>Berndt v. Tennessee</u>, 796 F.2d 879, 881 (6th Cir. 1986) (stating that Eleventh Amendment bars suit in federal court against any state, unless the state consents). The Tennessee Constitution expressly reflects that "suits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I § 17. According to a Tennessee statute, no court in the state has the power to entertain any suit against the state, "with a view to reach the state, its treasury, funds, or property." Tenn. Code. Ann. § 20-13-102(a).

        There are, however, some statutory exceptions to Tennessee's sovereign immunity. For example, section 9-8-301 of the Tennessee Code created a Claims Commission, which has exclusive jurisdiction over certain monetary claims brought against the state of Tennessee that are based on the acts or omissions of state employees. Tenn. Code Ann. § 9-8-307(a)(1). Included in this list are claims arising from the "[n]egligent care, custody and control of persons," as well as "[n]egligently

creat[ing]or maintain[ing] dangerous conditions on state controlled real property." Id. § 9-8-307(a)(1)(C) & (E). Because Middlebrook asserts in her Complaint that the Defendants were negligent in their operation of MLCC and grossly negligent in maintaining living conditions at the facility (D.E. No. 1 Compl. ¶¶ 34-36, 47-52), the Defendants argue that the exclusive forum for Middlebrook's negligence claims is the Tennessee Claims Commission. (D.E. No. 16 at 5-6.)

The Plaintiff concedes the Eleventh Amendment bars her claims for monetary damages against all Defendants, except the named officials in their individual capacities. Middlebrook asserts, however, that she can bring her claims for injunctive relief against George Little, Reuben Hodge, Charles Banks, and Dwight Barbee, in their official capacities, even if she cannot seek damages from them. The Supreme Court has held that the Eleventh Amendment does not preclude suits against state officers, even in an official capacity, for injunctive relief. Ex Parte Young, 209 U.S. 123, 159-60 (1908). Thus, the Court dismisses all claims against the state of Tennessee, it agencies, TDOC and MLCC, as well as all monetary claims brought against Little, Hodge, Banks, and Barbee, in their official capacities. See Green v. Metrish, No. 2:04-CV-216, 2006 WL 2506191, at *3 (W.D. Mich. Aug. 29, 2006) (stating that a suit for monetary damages against employees of the Michigan Department of Corrections in their official capacities brought pursuant to § 1983 is in effect a suit against the State of Michigan, which is barred under the Eleventh Amendment). To the extent that the Plaintiff seeks injunctive relief against George Little, Reuben Hodge, Charles Banks, and Dwight Barbee, the Defendant's motion to dismiss is denied.

5.    Ripeness

The ripeness doctrine, which is based on the requirement of Article III of the United States Constitution that the judiciary only resolve cases and controversies, seeks to prevent federal courts

9

from deciding matters "that are premature for review, because the injury is speculative and never may occur." Erwin Chemerinsky, <u>Bush v. Gore Was Not Justiciable</u>, 76 Notre Dame L. Rev. 1093, 1102 (2001). The Defendants argue that Middlebrook makes only "conclusory allegations of constitutional violations regarding conditions at [MLCC] . . ." and her claims are therefore not ripe because they do not "articulate . . . cognizable [injuries]." (D.E. No. 16 at 8.) The Sixth Circuit has held, however, that the ripeness doctrine is generally applied in situations where "a party seeks a declaratory judgment based on pre-enforcement review of a statute or regulation . . . ." <u>Kardules v. City of Columbus</u>, 95 F.3d 1335, 1343 (6th Cir. 1996); <u>see also</u> Erwin Chemerinsky, <u>Federal Jurisdiction</u> 115 (2002) ("Ripeness properly should be understood as involving the question of *when may a party seek preenforcement review of a statute or regulation*."). Middlebrook does not ask this court to review a statute or regulation that has not yet been enforced. Rather, the Plaintiff complains of how she has been treated in the past at MLCC. Thus, the Court finds that the ripeness doctrine is inapplicable to the Plaintiff's claims.

6.     <u>Physical Injury</u>

The Prison Litigation Reform Act states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Sixth Circuit has held that this bar applies to *all* statutory and constitutional causes of action. <u>Robinson v. Corr. Corp. of Am.</u>, 14 Fed. Appx. 382, 383 (6th Cir. 2001) (citing <u>Cassidy v. Ind. Dep't of Corr.</u>, 199 F.3d 374, 376-77 (7th Cir. 2000)). While the physical injury alleged need not be significant, it must be more than de minimus in order for a plaintiff to prevail on any of her

constitutional claims.  <u>Jarriett v. Wilson</u>, 162 Fed. Appx. 394, 400 (6th Cir. 2005) ("[The physical injury] must be more than de minimus for an Eighth Amendment claim to go forward.").

Middlebrook does not challenge the Defendants' assertion that her claims are based primarily on mental or emotional injuries, but argues instead that she *has* suffered physical injuries.  (D.E. No. 27 at 9.)  However, the Complaint is devoid of any specific allegation that the Plaintiff was physically injured at MLCC.  (<u>See</u> D.E. No. 1, Compl.)  Middlebrook presents only vague assertions to that effect, for example, her claim that "[d]efendants are aware of and have shown deliberate indifference to such [medical] problems, which could be expected to cause not only unnecessary pain and suffering, but long term, permanent or life threatening health problems for inmates, *including the Plaintiff*."  (<u>Id.</u> ¶ 19 (emphasis added).)  She tries to remedy this defect in her pleading by attaching an affidavit to her response to the Defendants' motion that claims that she experienced "torn ligaments in [her] left knee," a "busted right knee," and "infection" at MLCC.  (D.E. No. 27 Ex. C, Aff. of Pl. ¶ 6.)  The Plaintiff also asserts that she suffered from "breathing problems," "dehydration," "nausea & vomiting," "back pain," and "being assaulted."  (<u>Id.</u>)  Middlebrook contends that these injuries were so severe that she was not allowed to work for one year.  (<u>Id.</u> ¶ 7.)

The Court, however, is not required to consider the allegations in the Plaintiff's affidavit for the purpose of deciding the Defendants' motion to dismiss.  <u>See</u> Fed. R. Civ. Pro. 12(d) ("If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to *and not excluded* by the court . . . .") (emphasis added); <u>Maiden v. N. Am. Stainless</u>, 183 Fed. Appx. 485, 487 (6th Cir. 2005) (per curiam) (affirming dismissal of complaint where the plaintiff did not provide sufficient factual allegations in his complaint, but attached an affidavit that did); <u>In re TWA Inc. v. Post Confirmation Estate</u>, 305 B.R. 228, 232 (D. Del. 2004) ("[A] party cannot amend its [insufficient]

complaint by a response or affidavit filed in opposition to a motion to dismiss.") (citation and internal quotation marks omitted). Even if the affidavit were admitted, it would not satisfy the requirements of § 1997e(e), because the Plaintiff does not assert that any of the Defendants were responsible for these injuries, only that they occurred while she was incarcerated. (See id. ¶¶ 1-10.) Thus, the Court cannot conclude that the injuries resulted from the unconstitutional conduct of which the Defendants are accused.

Nonetheless the Court will not dismiss her claims in light of the fact that several circuits have held that while § 1997e(e) bars prisoners from seeking compensatory damages for constitutional claims when there is no physical injury, they may be awarded punitive or nominal damages based on the alleged violation of their constitutional rights, rather than on any emotional or mental distress suffered as a result of the violation,. See e.g., Hutchins v. McDaniels, 512 F.3d 193, 197 (5th Cir. 2007) (per curiam) ("While Hutchins is certainly barred from recovering any compensatory damages in the absence of physical injury, we hold today that Hutchins may recover nominal or punitive damages, despite § 1997e(e), if he can successfully prove that McDaniels violated his Fourth Amendment rights."); Calhoun v. Detella, 319 F.3d 936, 941-42 (7th Cir. 2003) (holding that § 1997e(e) does not bar punitive and nominal damages for an Eighth Amendment violation involving no physical injury); Allah v. Al-Hafeez, 226 F.3d 247, 253 (3d Cir. 2000) ("[T]o the extent that Allah's claims for punitive damages are premised on the alleged violation of his right to free exercise of religion rather than on any emotional or mental distress suffered as a result of the violation, those claims also are not barred."). Furthermore, prisoners can seek injunctive and declaratory relief. Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999); Zehner v. Trigg, 133 F.3d 459, 462 (7th Cir. 1997). The Plaintiff can, therefore, pursue punitive and nominal damages premised on the alleged

violation of her constitutional rights, as well as injunctive and declaratory relief, despite her failure to allege she suffered a physical injury as a result of the Defendants' conduct.

7.     <u>Deliberate Indifference to the Plaintiff's Serious Medical Needs</u>

The Supreme Court has held that States and their political subdivisions are required by the Eighth Amendment to "provide medical care for those whom [they are] punishing by incarceration." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). To establish an Eighth Amendment violation based on the failure to provide proper medical care, plaintiffs must show that two requirements have been met. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). Second, the "prison official must have a 'sufficiently culpable state of mind.'" <u>Id.</u> (quoting <u>Wilson</u>, 501 U.S. at 298). That "state of mind is one of 'deliberate indifference' to inmate health or safety." <u>Id.</u> (quoting <u>Wilson</u>, 501 U.S. at 301-03).

The Defendants argue that Middlebrook's "allegations [as to her medical treatment] are conclusory, do not set forth any specific facts and do not make out an actionable [Eighth Amendment deliberate indifference] claim . . ." (D.E. No. 16 at 12.) Furthermore, they claim that there is no evidence that any of the Defendants knew of and disregarded an excessive risk to inmate health. (<u>Id.</u> at 13.) The question before the Court, however, is not whether there is any *evidence* to support the Plaintiff's Eighth Amendment claim, but whether the factual allegations in her Complaint sufficiently state a claim upon which relief can be granted. In <u>Twombly</u>, the Supreme Court clarified the standard complaints must meet to avoid dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. 127 S. Ct. at 1964-65. It noted that while Rule 8(a)(2) only requires "a short and plain statement of the claim showing the pleader is entitled to relief," the

plaintiff must still provide sufficient factual allegations to "raise a right to relief above the speculative level." Id. (citations omitted). While the factual allegations need not set out *in detail* the basis for the claim, the complaint must provide a showing of entitlement to relief by asserting occurrences and events in support of the claim presented. Id. n. 3 (citations omitted). Otherwise, the Defendant does not receive fair notice of the nature of the claim and the grounds upon which the claim rests, as required by Rule 8(a). Id.

The Plaintiff makes the following allegations about the medical treatment she has received at MLCC:

> Inmates at MLCC, including the Plaintiff, have been denied medical care, dental care, and mental health care. The Defendants do not provide adequate space, jail staff, medical personnel or a medical budget to meet the basic level of health care required by the number of men and women now incarcerated at MLCC. Prescription medicine is often delivered late, or not delivered at all, and prescriptions are allowed to lapse without refilling. Inmates, including the Plaintiff, must wait long periods of time for urgently needed medical care for problems such as abscessed teeth, sinus infections, etc. Some inmates with long established histories of medical problems do not receive regular medical care. Inmates, including the Plaintiff, are refused their medication and refused the opportunity to see a physician despite repeated request. Defendants are aware of and have shown deliberate indifference to such problems . . . .

(D.E. No. 1 Compl. ¶ 19.) These general allegations, which seem largely based on the experiences of inmates other than the Plaintiff, fall short of the requirements outlined in Twombly. Middlebrook does not allege that *she* suffered from a medical problem that was sufficiently serious and that the Defendants were deliberately indifferent towards it.[4] See Estelle, 429 U.S. at 106 ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to

---

[4] The only specific medical conditions that listed in the Complaint are abscessed teeth and sinus infections. However, the pleading does not directly state whether she suffered from these herself or whether these are just examples of medical conditions suffered by the general population of inmates. (D.E. No. 1, Compl. ¶ 19.)

evidence deliberate indifference to [her] serious medical needs."). Nor do her allegations give the Defendants notice of the basis for her claim. Thus, the Complaint does not state an actionable Eighth Amendment violation based on the failure to provide proper medical care.

8. <u>Failure to Train</u>

Inadequacy of training may serve as a basis for liability under § 1983. In order to state a claim against the Defendants,[5] the Plaintiff must allege the existence of a policy, practice or custom that resulted in an injury. <u>Moreno v. Metro. Gen. Hosp.</u>, No. 99-5205, 2000 WL 353537, at *2 (6th Cir. 2000) (citing <u>Monell v. Dep't of Soc. Servs. of the City of New York</u>, 436 U.S. 658, 690 (1978)). The Complaint must set forth sufficient facts tracing this injury to a policy, custom, or practice and it must allege that the Defendants' failure to train amounted to deliberate indifference to Middlebrook's rights. <u>Id.</u> (citing <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)). After describing the law applied to failure to train claims in detail, the Defendants argue that the Complaint should be dismissed, "[b]ecause the plaintiff cannot demonstrate that the defendants violated her constitutional rights." (D.E. No. 16 at 14.)

Middlebrook alleges in her Complaint that George Little was responsible for formulating the policies and procedures in effect at MLCC and was in charge of overseeing the facility. (D.E. No. 1 Compl. ¶ 6.) The Plaintiff also claims that Reuben Hodge, Charles Banks, and Dwight Barbee, oversaw the operation and implementation of all MLCC policies. (<u>Id.</u> ¶¶ 8-10.) According to Middlebrook, the Defendants acted with deliberate indifference towards her by failing to adequately

---

[5] Failure to train claims cannot be brought against officials acting in their individual capacities. <u>Brown v. Budz</u>, 398 F.3d 904, 918 (7th Cir. 2005). As noted above, the only remedy available for all claims brought by the Plaintiff against the Defendants in their official capacity is injunctive relief. <u>Ex Parte Young</u>, 209 U.S. at 159-60.

train MLCC staff to meet the inmates' basic needs, which led to the conditions of confinement described above.  (Id. ¶ 45.)  These conditions included exposure to extreme temperatures, unsanitary and pest-infested cells and facilities, violence by other inmates, and sexual harassment by MLCC employees.  (Id. ¶¶ 11-33.)  The allegations contained in the Complaint are sufficient to state a failure to train claim, because the Plaintiff maintains that the Defendants acted with deliberate indifference and her purported injuries were conceivably traceable to a policy of providing insufficient training to MLCC staff.

9. Denial of Court Access

Prisoners have a fundamental right of access to courts and a right to petition for redress of grievances.  Ward v. Dyke, 58 F.3d 271, 275 (6th Cir. 1995), cert. denied, 516 U.S. 991 (1995) (citations omitted).  In enforcing that right, the Supreme Court has held that prison officials cannot actively interfere with inmates' attempts to prepare or file legal documents and state courts must waive filing and transcript fees for indigent prisoners.  Lewis v. Casey, 518 U.S. 343, 350 (1996) (citations omitted).[6]  Furthermore, the Court has affirmed a court order requiring a state to make law library facilities available to its inmates.  Id. at 351.  However, prisoners do not have standing to pursue a claim based on the denial of access to courts, unless they have suffered an actual injury. Id. at 349.  To establish an injury, an inmate "might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably

---

[6] The Court noted that this right extends only to the extent that prisoners seek to "attack their sentences, directly or collaterally, [or] . . . challenge the conditions of their confinement." Id. at 355.

actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." Id. at 351.

The Defendants argue that the Plaintiff's denial of access claim must be dismissed because Middlebrook has not alleged that she suffered an actual injury as a result of the Defendants' failure to provide here with "adequate and safe access to legal materials." (D.E. No. 16 at 14-15 (quoting D.E. No. 1, Compl. ¶ 21).) In response, the Plaintiff asserts that she was denied access to the courts when she was attempting to file the instant civil rights claim and collaterally attack her conviction and sentencing. (D.E. No. 27 at 12.) However, the Plaintiff does not cite any allegation in her Complaint, but instead refers again to the affidavit which she attached to her response in order to compensate for the deficiencies in her Complaint. (Id. (citing D.E. No. 27 Ex. C, Aff. of Pl.).) The Complaint itself is devoid of any reference to an injury suffered by Middlebrook as a result of the Defendants' alleged denial of access and, therefore, fails to state a claim upon which relief can be granted. (See D.E. No. 1, Compl.)

### 10. Qualified Immunity

As a shield to a section 1983 action, a public official may claim protection from liability through qualified immunity. Crockett v. Cumberland Coll., 316 F.3d 571, 579 (6th Cir. 2003). "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); see also Buckner v. Kilgore, 36 F.3d 536, 539 (6th Cir. 1994), reh'g and suggestion for reh'g en banc denied, (Nov. 21, 1994). In Saucier v. Katz, the Supreme Court articulated a two

step test to determine whether qualified immunity is appropriate. 533 U.S. 194, 200-01; see also Solomon v. Auburn Hills Police Dep't, 389 F.3d 167, 172 (6th Cir. 2004). "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 200-01. If this question is answered in the affirmative, "the next, sequential step is to ask whether the right was clearly established." Id. at 201. As to the second step, a court must decide "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, . . . without regard to [his] underlying intent or motivations." Solomon, 389 F.3d at 173 (citations and emphasis omitted).

In determining whether a constitutional right is clearly established, courts look first to the decisions of the Supreme Court, then to the decisions of the Sixth Circuit and courts within the Sixth Circuit, and finally to decisions of other circuits. Black v. Parke, 4 F.3d 442, 445 (6th Cir. 1993) (citation omitted). There need not be a prior decision directly on point, however, in order for a right to be clearly established. Hope v. Pelzer, 536 U.S. 730, 741 (2002). A plaintiff can overcome qualified immunity if the official had "fair warning" that his conduct was unconstitutional. Id.

The Defendants argue that they are entitled to qualified immunity because their conduct did not violate any of the Plaintiff's clearly established statutory or constitutional rights. (D.E. No. 16 at 15.) Middlebrook responds that they are not entitled to qualified immunity because the Complaint alleges that they violated her clearly established constitutional rights. (D.E. No. 27 at 13.) Neither party cites any case in which qualified immunity was either granted or denied on the basis of conduct that is similar to that alleged to have been committed by the Defendants. To restate briefly, the Plaintiff's constitutional claims, brought pursuant to the Fourth, Eighth, and Fourteenth

Amendments, are based on the following conditions of confinement: 1) exposure to extreme temperatures and lack of ventilation inside the prison; 2) sanitation problems, including raw sewage coming from the toilets and exposure to mold, and deprivation of hygienic materials, toilet paper, and clean clothes; 3) lack of showers and toilets; 4) extreme water temperatures in the showers; 5) lack of cleaning supplies, as well pest infestations and food contaminated by insects; 6) fire and safety violations, along with power problems, 7) sexual harassment by guards; 8) lack of recreational activities; 9) being forced to do work beyond her physical capabilities; 10) and being exposed to inmates who threaten her physical safety. (D.E. No. 1 Compl. ¶¶ 45(a) & 35.)

When addressing Eighth Amendment claims, courts must examine "all of the prison's conditions and circumstances, rather than isolated conditions and events." Walker v. Mintzes, 771 F.2d 920, 925 (6th Cir. 1985). In some circumstances, "the totality itself may amount to an eighth amendment violation, but there still must exist a specific condition on which to base the eighth amendment claim." Id.; see also Wilson, 501 U.S. at 304 ("Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . .").

The Sixth Circuit has held that the following conditions can violate the Eighth Amendment: denial of adequate access to shower facilities, threats to safety, vermin infestation, inadequate lighting, inadequate ventilation, unsanitary eating conditions, and housing inmates with known dangerous individuals. Wilson v. Seiter, 893 F.2d 861, 864-65 (6th Cir. 1990) (citations omitted), vacated on other grounds by 501 U.S. 294 (1991); see also Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006) (finding that a lack of heat, ventilation, proper clothing, utilities, hygienic materials and

sanitation can violate the Eighth Amendment) (citations omitted); <u>Walker</u>, 771 F.2d at 928 (recognizing that inmates have a constitutional right to have the opportunity to bathe); <u>Ramos v. Lamm</u>, 639 F.2d 559, 568 (10th Cir. 1980) (holding that heat, hot and cold water, light, and plumbing must be provided by the state); <u>Woodward v. Weberg</u>, No. 2:06-cv-284, 2008 WL 746852, at *7 (W.D. Mich. Mar. 18, 2008) ("It is the opinion of the undersigned that the right to minimally adequate sanitary conditions and hygiene, including the right to toilet paper, has been clearly established."). Furthermore, "excessive exposure to heat may in some instances constitute cruel and unusual punishment." <u>Wilson</u>, 893 F.2d at 865.

The Sixth Circuit has also noted that, "restrictions on exercise may violate the Eighth Amendment under some circumstances." <u>Rodgers v. Jabe</u>, 43 F.3d 1082, 1088 (6th Cir. 1995). Sexual harassment, when it includes unwanted contact or touching, can also constitute an Eighth Amendment violation, <u>Spears v. Masters</u>, No. 2:07-cv-198, 2008 WL 111274, at * (W.D. Mich. Jan. 8, 2008), as can fire safety problems, depending on the circumstances, <u>Hadix v. Johnson</u>, 367 F.3d 513, 528 (6th Cir. 2004). Last, several circuits have held that the Eighth Amendment is implicated when prisoners are forced to perform physical labor which is beyond their strength, thus endangering their health and causing undue pain. <u>See e.g.</u>, <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir. 2006); <u>Howard v. King</u>, 707 F.2d 215, 219 (5th Cir. 1983) ("[P]rison work requirements which compel inmates to perform physical labor which is beyond their strength, endangers their lives, or causes undue pain constitutes cruel and unusual punishment.").

Based on the foregoing precedent, the Court concludes that the Plaintiff has alleged conduct that, depending on the circumstances, may have violated the Plaintiff's clearly established statutory or constitutional rights. Without further development of the record, however, the Court cannot

determine as a matter of law whether the Defendants are entitled to qualified immunity as to this claim and therefore denies their motion to dismiss on this basis.

<u>CONCLUSION</u>

For the reasons discussed above, the Court hereby GRANTS IN PART and DENIES IN PART the Plaintiff's motion to dismiss. Specifically, the Court dismisses all claims brought against the state of Tennessee, and its agencies, TDOC and MLCC, and all monetary claims brought against George Little, Reuben Hodge, Charles Banks, and Dwight Barbee, in their official capacities, because these Defendants are protected from suit by the Eleventh Amendment. In addition, the Court dismisses 1) all claims against Defendant George Little in his individual capacity, 2) all claims for compensatory damages that are based on federal law, 3) any claim that Middlebrook received inadequate medical care in violation of the Eighth Amendment, and 4) any claim that she was denied her right of access to courts.

IT IS SO ORDERED this 6th day of May, 2008.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE